**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

DE'ANGELO DON VIRGIL WINSTON,        )
                                                                 )
                        Plaintiff,                               )
                                                                 )
            v.                                                   )        No. 4:20-CV-566 NCC
                                                                 )
JIMMIE EDWARDS, et al.,                            )
                                                                 )
                        Defendants.                          )

<u>**OPINION, MEMORANDUM AND ORDER**</u>

This matter is before the Court upon the motion of plaintiff De'Angelo Don Virgil Winston (registration no. 35437-044), an inmate at Pulaski County Detention Center, for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period.  After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid.  *Id.*

Plaintiff has not submitted a *certified* prison account statement.[1] As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00.  *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his certified prison account statement in support of his claim.

### 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right.  *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009).  These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949.  Second, the Court must

---

[1]Plaintiff has submitted a *non-certified* prison account statement titled "Resident Account Summary." The Court is unable to use this document to calculate his initial partial filing fee.

determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951.Then faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred.  *Id.* at 1950, 1951-52.

## The Complaint

Plaintiff, an inmate at Pulaski County Detention Center, brings this action pursuant to 42 U.S.C. § 1983. He brings this action against five defendants located at the St. Louis City Justice Center in their official capacities only:  Jimmie Edwards (Director of Public Safety); Dale Glass (Commissioner of Corrections); Adrian Barnes (Superintendent of Corrections); Warren Thomas (Unit Manager); Ms. V. Sullivan-Price (Constituent Service Unit Officer).

Plaintiff asserts that during his incarceration at the St. Louis City Justice Center in September 2019, he sought and was denied a Kosher meal from "defendants."[2] Plaintiff does not indicate which of the defendants he purportedly asked for a Kosher meal from or on what specific date he was purportedly denied such a meal. Plaintiff also does not indicate who purportedly denied him such a meal, nor has he provided the Court with a copy of the alleged denial. From the documents attached to the complaint, the Court surmises that plaintiff is referring to the fact that the Justice Center does not have a Kosher kitchen, but instead provides Vegetarian meals to the inmates who request Kosher meals at the Justice Center.

---

[2]Plaintiff claims that he practices the Jewish faith.

The Court takes notice, pursuant to Federal Rule of Civil Procedure 10(c), the documents plaintiff has attached to his complaint. He has attached several Informal Resolution Request ("IRR") forms, as well as the IRR responses to his complaint. On February 6, 2020, plaintiff submitted an IRR seeking a "halal/kosher meal provision in accordance with my religious practices."[3] On February 13, 2020, Scott Weber, Correctional Caseworker, responded to plaintiff's request for a Kosher meal, as well as several of plaintiff's other grievance issues. As to the request for Kosher meal, Mr. Weber replied, "You have already submitted a Special Meal Request to the Unit Manager, and we will await the response. I explained that we do not have a Kosher kitchen here at CJC, and most likely you will receive a Vegetarian meal. But, we must await the Unit Manager's approval." Plaintiff has not indicated whether he received the vegetarian meal, which was in fact Kosher, at the Justice Center or not. His only allegation in this action is that the Justice Center failed to serve him a Certified Kosher meal when he sought one.

Plaintiff next alleges that "defendants" deprived plaintiff of the ability to access a functional four-tier grievance system. Plaintiff states this "act of denial" transpired sometime between September 2019 and May 2020. However, plaintiff has once again failed to allege which defendant deprived him of the ability to access the grievance system and on what date or time he was deprived of his ability to access the grievance system. Moreover, plaintiff complains that he was denied copies of his grievances at some point in time when he sought copies of the grievances for his own use.

As noted above, plaintiff has attached to the complaint several IRRs and IRR responses relative to his access to the grievance system at the Justice Center. Moreover, in Scott Weber's

---

[3]It appears that plaintiff was not housed at the St. Louis City Justice Center continuously from September of 2019 through May of 2020. At some point during this time period he was transferred on a writ to MCC Chicago and held there for a period of time. He was transferred back to the St. Louis City Justice Center on or about February 4, 2020 as noted in the IRR response filed by Scott Weber, Correctional Caseworker, on February 13, 2020. *See* Plaintiff's Exhibit 6 attached to his Complaint.

February 13, 2020, response to plaintiff IRR, he notes that "between [February 6, 2020] and [February 12, 2020], you used the Tablet Jail Mail to submit six (6) IRR Complaints to the Grievance officer, four (4) Requests to Corizon Medical, two (2) requests to the CJC Unit Manager, three (3) Requests to the Program Manager, and a Request to the CJC investigator." This appears to belie plaintiff's assertions that he was not given access to the grievance system at the Justice Center.

Plaintiff next asserts that Ms. Sullivan-Price, the Constituent Services Unit Officer, has failed to do her job duties at the Justice Center because she has failed to properly respond in a timely manner to his offender grievances and/or intentionally denied his grievances. Plaintiff again fails to provide a specific time or date relative to the grievances he is referring to.

Plaintiff alleges that defendants Ms. Sullivan-Price, Dale Glass, Adrian Barnes and Warren Thomas acted in concert to deny him access to the law library at the City Justice Center. Plaintiff additionally states that he was denied access to "legal materials, copies, access to courts, indigent supplies (paper stamps, copies, etc.)."[4]

Plaintiff asserts that he has been subjected to extreme hardships by "defendants" when he was assigned to a cell by an unnamed person in February, March and April of 2020 that had lights on for 24 hours per day. He states that he was affected greatly by the 24-hour lighting in that he suffered from improper rest and migraine headaches. Plaintiff filed an Informal Resolution Request about the matter on March 11, 2020, stating, "For an extensive period of days, weeks, I have been subjected to tortious conditions by St. Louis City Division of Corrections by being placed in an assigned cell with a mandatory 24hr 7day a week bright light with no relief."

---

[4]Although plaintiff has indicated in the defendant section of his complaint that he is bringing his action against defendants in their official capacities only, in this section of the body of his complaint, plaintiff states that defendants were "acting in concert within their official and individual capacities."

Plaintiff states that he was also subjected to extreme hardship by defendants Ms. Sullivan-Price, Dale Glass, Adrian Barnes and Warren Thomas when "they" confined him to Administrative Segregation in violation of his due process rights on April 1, 2020. Plaintiff does not state how his due process rights were purportedly violated relative to his confinement in Administrative Segregation. Nor does he explain how his stay in the Administrative Segregation Unit differed from his stay in the general population. Additionally, plaintiff does not state which of the alleged defendants actually placed him in Administrative Segregation. Plaintiff has not included any documentation to his complaint relative to his confinement in Administrative Segregation.

Plaintiff alleges in a very conclusory manner that "defendants" violated his Eighth Amendment rights when they failed to provide him cleaning solutions and subjected him to generally unsanitary conditions of confinement. However, he does not state exactly what was unsanitary about his conditions of confinement. He states, in general, that at certain times, he lacked clean linens, clean laundry, and running water. Nonetheless, he does not state when exactly this occurred or how often it occurred.

Plaintiff alleges that his rights were violated when his personal belongings were lost when they were transferred from MCC Chicago to the Justice Center in February of 2020.

Last, plaintiff asserts that 5 House lacks emergency buttons in the prison cells for use by the prisoners. He states that this could be dangerous if a prisoner has a medical emergency inside the cell. However, plaintiff does not state that he had such an emergency or that he was unable to contact a guard or correctional officer during his incarceration in 5 House. Plaintiff does indicate he suffers from chronic health conditions, such as diabetes, epilepsy and hypertension.

Plaintiff filed a change of address form with the Court on October 13, 2020. He was transferred from the St. Louis City Justice Center to Pulaski County Detention Center at that time.

Plaintiff seeks compensatory damages, punitive damages and injunctive relief in this action.

## Discussion

### A.  Defendants Jimmie Edwards, Dale Glass, Adrian Barnes and Warren Thomas

Plaintiff's claims against Jimmie Edwards, Dale Glass, Adrian Barnes and Warren Thomas must be dismissed for failure to state a claim. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of self-represented plaintiff's complaint against defendants who were merely listed as defendants in the complaint, but there were no allegations of constitutional harm against them); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

In the instant action, other than listing these defendants in the caption and describing their job titles, plaintiff has not set forth any *facts* indicating that Jimmie Edwards, Dale Glass, Adrian Barnes and Warren Thomas were directly involved in or personally responsible for the alleged violations of plaintiff's constitutional rights. As a result, the complaint fails to state a claim as to these defendants and they will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### B.  Official Capacity Claims Against All of the Defendants

Plaintiff brings this action against defendants in their official capacities only. Thus, even if plaintiff had adequately plead claims against the supervisory defendants, Jimmie Edwards, Dale Glass, Adrian Barnes and Warren Thomas, as well as defendant Ms. Sullivan-Price, the claims against these defendants would be subject to dismissal.

An official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener,* 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit,* 460 F.3d 979, 986 (8th Cir. 2006) (stating a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

All of the defendants are alleged to be employed by the City of St. Louis. Thus, plaintiff's official capacity claims against defendants are claims against the City itself. Although a local municipality can be sued directly under § 1983, plaintiff has not made the type of allegations necessary to establish the City of St. Louis' liability for the conduct alleged in his complaint. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).  *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no

other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis City.*, 981 F.2d 1537, 1546 (8th Cir. 1992). Plaintiff has not alleged that there was an official policy to deprive prisoners at the Justice Center of Kosher meals, nor has he alleged that there was an unofficial choice by Justice Center employees to deny Kosher meals to inmates at the Justice Center.

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Plaintiff has not alleged that there was a persistent pattern of unconstitutional misconduct or a tacit authorization of such conduct of denying Kosher meals after notice of the same by policymaking officials.

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln City.*, 874 F.3d 581, 585 (8th

Cir. 2017). Plaintiff has failed to allege any facts relative to a failure to train or supervise employees relative to providing Kosher meals to inmates.

Here, plaintiff has failed to establish the liability of the defendant City.  Plaintiff has not alleged any facts that the City has an unconstitutional policy or a widespread custom or system of belief, or that it has been deliberately indifferent in its failure to train or supervise its employees.

Thus, plaintiff's claim against the City will be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### C. Even if Plaintiff Alleged Claims Against Defendants in Their Individual Capacities, His Claims Would be Subject to Dismissal

### 1. Kosher Meals

Plaintiff asserts that he was denied a Kosher meal after he sought such a meal when he was transferred back to the St. Louis City Justice Department in February of 2020. He has attached an IRR relating to his request to his complaint dated February 6, 2020.

On February 13, 2020, Scott Weber, Correctional Caseworker, responded to plaintiff's request for a Kosher meal, as well as several of plaintiff's other grievance issues. As to the request for Kosher meal, Mr. Weber replied, "You have already submitted a Special Meal Request to the Unit Manager, and we will await the response. I explained that we do not have a Kosher kitchen here at CJC, and most likely you will receive a Vegetarian meal. But, we must await the Unit Manager's approval." Plaintiff has not indicated whether he received the vegetarian meal, which was in fact Kosher, at the Justice Center or not. His only allegation in this action is that the Justice Center failed to serve him a Certified Kosher meal when he sought one.[5]

---

[5]The Court notes that plaintiff brought a similar action in this Court on November 7, 2014. *See Winston v. Gray*, No. 4:14-CV-1898 RWS (E.D.Mo.). In his case, he claimed that the St. Louis City Justice Center was failing to provide

Plaintiff's allegations suffer from several issues. First and foremost, he has not indicated which defendant allegedly denied him a Kosher meal and purportedly violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1(a).[6] Second, plaintiff has not indicated whether he was in fact given the vegetarian meal at the Justice Center and if this, in fact, served as his Kosher meal. Notably, however, plaintiff's claims under RLUIPA are moot, as he has since been transferred to Pulaski County Detention Center. *See Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam) (inmate's RLUIPA claim for injunctive relief was mooted by transfer to another facility where he was no longer subject to the challenged policy). Furthermore, while the RLUIPA allows official capacity claims against prison officials, it does not authorize monetary damages based on official-capacity claims. *See Van Wyhe v. Reisch*, 581 F.3d 639, 655 (8th Cir. 2009). Therefore, plaintiff's claims under the RLUIPA are frivolous in this action and subject to dismissal.

Plaintiff claims that defendants denied him Kosher meals and violated his rights under the Free Exercise Clause of the First Amendment.[7] The First Amendment provides, in part, that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. As noted above, plaintiff brought this action against defendants in their official capacities only. And to that extent any claims under the Free Exercise Clause fail to state a claim for relief as he

---

him with a Kosher meal. The Court issued process on plaintiff's complaint. However, plaintiff's action was dismissed on May 29, 2015, after he failed to comply with a Court Order relating to discovery. In its Order of Dismissal the Court stated, "I note that Defendants have represented in an April 2, 2015 filing that Winston has been receiving three Kosher meals a day. Winston has not disputed this assertion."

[6] He alleges in a conclusory fashion that all of the named defendants denied him access to a Kosher meal. He has not, however, articulated which defendant in particular actually told him he was not able to have the meal, on which date. The majority of these defendants, as noted above, are actually supervisory defendants and plaintiff does not make allegations against these defendants except in respondeat superior.

[7] A prisoner's claim under RLUIPA is evaluated under a different standard than a First Amendment claim. "By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Murphy v. Missouri Department of Corrections*, 372 F.3d 979, 987 (8th Cir. 2004).

has not articulated a policy or custom of the Justice Center denied him the right to religious accommodations.

Even if the Court were to assume plaintiff brought his Free Exercise claim against defendants in their individual capacities, he has not articulated which defendant he believes violated his rights under the Free Exercise Clause, or who failed to accommodate his request for Kosher meals. The only individual plaintiff has identified in the complaint that he sought Kosher meals from was a person not named as a defendant, Caseworker Scott Weber.

As noted, on February 13, 2020, Mr. Weber responded to plaintiff's request for Kosher meals noting that he would most likely receive a Vegetarian meal and that his request had been forwarded to the Unit Manager and they were awaiting a response. Plaintiff has not indicated whether he did, in fact, receive the Vegetarian meals at the Justice Center, which are Kosher.

Prison inmates retain protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974) and *Cruz v. Beto,* 405 U.S. 319 (1972)). These rights are limited, however, by considerations unique to the demands of the penal system. *Id*. *See also Murphy*, 372 F.3d at 983 (prisoners are subject to limitations on their constitutional rights "in light of the needs of the system"). In balancing the constitutional rights of the prisoner with the valid objectives of the penal system, courts typically defer to prison authorities "who are actually charged with and trained in the running of the particular institution under examination." *O'Lone*, 405 U.S. at 349.

With this deference in mind, courts have developed a reasonableness test less restrictive than that usually applied to alleged infringements of constitutional rights. *Id*. at 349. Specifically, in order to make a valid First Amendment claim, plaintiff must establish (1) that his religious beliefs are sincerely held and (2) that his free exercise of those beliefs have been actually infringed

upon by the defendant. *See Goff v. Graves*, 362 F.3d 543, 547 (8th Cir. 2004). Actual infringement occurs when a prison places a "substantial burden" on an inmate's ability to practice religion. *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997). Substantially burdening an inmate's free exercise of religion means that the regulation:

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (citing *Murphy*, 372 F.3d at 988).

If the plaintiff is able to show that he was substantially burdened, the defendant may still prevail if he can establish that the prison regulations are "reasonably related to legitimate penological interests." *Goff*, 362 F.3d at 549. *See also Turner v. Safley*, 482 U.S. 78, 89 (1987) (stating that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests").

"Multiple courts agree inadvertent and isolated incidents of religious dietary missteps do not, as a matter of law, constitute a substantial burden on a plaintiff's religion." *Mbonyunkiza v. Beasely*, 2018 WL 10483964, at *6 (S.D. Iowa Sept. 28, 2018) (collecting cases). For example, in *Phillips v. Boone Cty. Jail*, 2009 WL 648905, at *1 (W.D. Mo. Mar. 10, 2009), the district court held that a "one-time incident" of serving a meal with pork to Muslim inmates "cannot be said to substantially burden their exercise of religion." In denying the First Amendment claim, the district court also took into account that the incident was not intentional, noting "grievance documents submitted with the complaint clearly indicate[d] this was a one-time incident, was accidental, and defendants offered their apologies." *Id. See also Johnson-Bey v. Ind. Dep't of Corr.*, 668 F. Supp.

2d 1122, 1129 (N.D. Ind. Oct. 20, 2009) (finding one isolated negligent act of serving pork to a Muslim inmate did not rise to the level of a First Amendment violation).

In *Maynard v. Hale*, 2012 WL 3401095, at *1 (M.D. Tenn. Aug. 14, 2012), plaintiff alleged that defendants interfered with his ability to fast during Ramadan by serving insufficient meals on five occasions. The district court stated that "missing one meal did not affect . . . his ability to practice his religion.  Moreover, a short-term and sporadic disruption of his Ramadan eating habits does not . . . allege a substantial burden on his religious freedom." *Id.* at *4. Similarly, in *Crump v. Best*,  2012 WL 1056806, *8 (E.D. Mich. Mar. 5, 2012), the Court found that having to eat cold or uncooked food on six occasions was not "sufficiently serious so as to constitute a 'substantial burden' on Plaintiff's ability to observe the Ramadan holiday[.]"

In *Griffith v. Hofmann*, 2008 WL 4682690, at *7 (D. Vt. Oct. 21, 2008), the prisoner complained that his Ramadan meals were smaller portions than usual and were cold.  In dismissing his claim, the Court noted, "[t]here may be inconveniences [regarding denials of religiously required food] so trivial that they are most properly ignored. In this respect, this area of the law is no different from many others in which the time-honored maxim 'de minimis non curat lex' applies." *Id.* (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 203 n. 6 (2nd Cir. 2004)). In other words, a minor deprivation of a religious meal does not place a substantial burden on a plaintiff's ability to practice his or her religion.

Here, because plaintiff was in Chicago from sometime late in September of 2019 until the beginning of February of 2020, the Court cannot count this time period relative to his desire for Kosher meals. However, he sought the meals through an IRR (and Special Food Request) on February 6, 2020. And his IRR was answered on February 13, 2020 by Scott Weber at which time Mr. Weber indicated that his request had been submitted and he would likely begin receiving the

option for Kosher meals at the Justice Center, which was Vegetarian meals. Plaintiff does not indicate, however, if and when he started receiving the Vegetarian meals.

There are no facts to support plaintiff's conclusion that the lack of a Kosher kitchen at the Justice Center burdened his ability to practice his religion. Moreover, there is no indication whatsoever that any of the defendants in this action acted in such a way as to intentionally deprive plaintiff of receipt of the Vegetarian meals at the Justice Center. Therefore, plaintiff has failed to state a claim against any of the defendants in their individual capacities and to the extent plaintiff has brought such a claim it must be dismissed.

**2.  Grievance Processing**

Plaintiff next alleges that "defendants" deprived plaintiff of the ability to access a functional four-tier grievance system. Plaintiff states this "act of denial" transpired sometime between September 2019 and May 2020. As noted above, plaintiff has failed to allege exactly which defendant purportedly deprived him of the right to access the grievance system. Additionally, he has not articulated the date or time he was deprived of that right. Although he also states he was denied copies of his grievances, he has provided the Court with copies as exhibits to his complaint.

Moreover, in Scott Weber's February 13, 2020, response to plaintiff IRR, he notes that "between [February 6, 2020] and [February 12, 2020], you used the Tablet Jail Mail to submit six (6) IRR Complaints to the Grievance officer, four (4) Requests to Corizon Medical, two (2) requests to the CJC Unit Manager, three (3) Requests to the Program Manager, and a Request to the CJC investigator." This appears to belie plaintiff's assertions that he was not given access to the grievance system at the Justice Center.

To the extent plaintiff can be understood to claim that one of the defendants responded inappropriately to his grievance or his grievance appeal, such allegations do not state a claim of

- 15 -

constitutional dimension. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (prison official's failure to process or investigate grievances, without more, is not actionable under § 1983; grievance procedure is procedural right only and confers no substantive right on inmate).

### 3. Conditions of Confinement

When evaluating the constitutionality of pretrial-detainee conditions, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* Furthermore, "the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536-37. *See also Smith v. Conway Cty., Ark.,* 759 F.3d 853, 858 (8th Cir. 2014) (stating that "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not"). Although some loss of freedom of choice and privacy are inherent aspects of confinement, "if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment." *Bell*, 441 U.S. at 539.

In addition, plaintiff also has the Constitutional protection of the Eighth Amendment, which prohibits cruel and unusual punishment, and limits conditions of confinement.[8] *Robinson v. California,* 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton

---

[8] Pretrial detainee § 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition of cruel and unusual punishment. *See Kahle v. Leonard,* 477 F.3d 544, 550 (8th Cir.2007) (stating "[t]his makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."). *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011).

infliction of pain" including those that are "totally without penological justification." *Rhodes,* 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)).

The Supreme Court has stated that the "Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 492 U.S. 337, 349 (1981), and that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of a § 1983 conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Although the Constitution does not mandate comfortable prisons, inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Whitnack v. Douglas Cty.*, 16 F.3d 954, 957 (8th Cir. 1994) (internal quotation and citations omitted). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991)). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* (quoting *Wilson*, 501 U.S. at 305). "Conditions, such as a filthy cell, may be 'tolerable for a few days and intolerably cruel for weeks or months.'" *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)).

Plaintiff alleges in a very conclusory manner that "defendants" violated his Eighth Amendment rights when they failed to provide him cleaning solutions and subjected him to generally unsanitary conditions of confinement. However, he does not state exactly what was unsanitary about his conditions of confinement. He states, in general, that at certain times, he lacked clean linens, clean laundry, and running water. Nonetheless, he does not state when exactly this occurred or how often it occurred.

To state a claim for unconstitutional conditions of confinement under the Eighth Amendment, an inmate must show that the alleged deprivations denied him the minimal civilized measure of life's necessities and that defendants were deliberately indifferent to excessive risk to his health or safety. *E.g.,Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995) ("Eighth Amendment does not absolutely bar placing an inmate in a cell without clothes or bedding.").

Plaintiff's failure to allege a specific defendant who purportedly committed the violations is fatal to his request for relief. Moreover, plaintiff has once again failed to articulate how often and when the unlawful conditions of confinement occurred. In even some long time periods, failure to provide cleaning supplies, clean laundry or running water is not enough to establish unlawful conditions of confinement. *See White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (finding no Eighth Amendment violation where prisoner confined to allegedly unsanitary cell for eleven (11) days); *Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) (finding no Eighth Amendment or due process violation where pretrial detainee was subjected to overflowed toilet in his cell for four days); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 957 (8th Cir. 1994) (finding no constitutional violation where inmate placed in unclean cell containing dried feces, vomit, hair, garbage, rotting food, and dried human mucus and not offered limited cleaning supplies until three to four hours later); *Scott v. Carpenter*, 24 Fed. Appx. 645, 647-48 (8th Cir. 2001) (finding no denial of "minimal civilized measure of life's necessities" when prisoner was able to shower only fifteen times in six months including a twenty-eight-day period without a shower).[9]

---

[9]Although the Court has previously noted that any claims against defendants in their official capacities are subject to dismissal, the Court has taken time to point out that even if plaintiff had brought his claims against defendants in their individual capacities, his claims would be dismissed. However, the Court is unsure of how to address plaintiff's claim that was assigned to a cell by an unnamed person with inoperable lighting. In several different areas of the complaint he has changed the time period he was subject to these conditions. In one portion of the complaint he states that the lighting was "bright" for "24 hours" in February, March and April. However, in another portion of his complaint, plaintiff states that he was confined to an Administrative Segregation cell on April 1, 2020. And the Court takes note that he did not return to the Justice Center until the first week in February 2020.Thus, the Court is confused by plaintiff's assertion that he was subjected to a cell with inoperable lighting for three months, including all of April 2020, while also stating on April 1, 2020 he was confined to Administrative Segregation. The Court can only surmise he was subjected to the "inoperable lighting" for a shorter period of time, perhaps three to four weeks,

### 4.  Access to Courts

Plaintiff alleges that "defendants" acted in concert to deny him access to the law library at the City Justice Center. Plaintiff additionally states that he was denied access to "legal materials, copies, access to courts, indigent supplies (paper stamps, copies, etc.)."

To state a claim premised upon denial of access to the courts, a plaintiff must demonstrate that he suffered an "actual injury," such as the loss or rejection of a nonfrivolous legal claim regarding, inter alia, the conditions of his confinement. *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996). The Eighth Circuit has recognized that, when bringing an access to courts claim, it is insufficient to merely allege a denial of access to a specific resource, even if the denial is systemic. *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam) (citing *Lewis*, 518 U.S. 343). Instead, the plaintiff must plead (and ultimately prove) that the lack of the resource deprived him

---

from the second week in February through March, perhaps. Additionally, it does not appear that the "inoperable" lighting in the cell was intentional." As plaintiff states that he asked on March 1st that the lighting be fixed. A pretrial detainee's conditions of confinement are unconstitutional if they amount to punishment. *Stickley v. Byrd,* 703 F.3d 421, 423 *(8th Cir. 2013)* at 423 (citing *Morris v. Zefferi,* 601 F.3d 805, 809 (8th Cir. 2010)). To state a plausible conditions-of-confinement claim, plaintiff must demonstrate both an objective and a subjective element. To satisfy the objective element, plaintiff must demonstrate he was confined in conditions that were sufficiently serious to pose a substantial risk of serious harm or deny him "the minimal civilized measure of life's necessities." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994), *Hamner v. Burls,* 937 F.3d 1171, 1178 (8th Cir. 2019). As noted above, plaintiff complains that the lighting in the cell was broken, or inoperable. He does not assert that the lighting was being used as punishment. Additionally, the duration of the exposure to the conditions and the harm suffered are key facts in determining whether this element has been satisfied. *Tokar v. Armontrout,* 97 F.3d 1078, 1082 (8th Cir. 1996); *Whitnack v. Douglas Cty.,* 16 F.3d 954, 958 (8th Cir. 1994). To satisfy the subjective element, plaintiff must demonstrate that the defendant acted with deliberate indifference to his health or safety, meaning that the defendant actually knew of and disregarded the risk. *Farmer,* 511 U.S. at 834, *Williams v. Delo,* 49 F.3d 442, 445 (8th Cir. 1995). As stated above, plaintiff has not brought his claim against any of the defendants in their individual capacity. Plaintiff has not indicated who placed him in the cell with inoperable lighting or if he complained about the cell to any of the named defendants. Despite plaintiff's contention, it is not *per se* unconstitutional to require a detainee to sleep in a cell with the lights on. *Ferguson v. Cape Girardeau County,* 88 F.3d 647, 650 (8th Cir. 1996) (no constitutional violation where prisoner was forced to sleep on the floor on a mat, under constant bright lights, for fourteen days, a period of "relative short duration"); *see also Stickley,* 703 F.3d at 423-24 (citing with approval cases finding that certain deprivations did not amount to constitutional violations, including being subjected to an overflowing toilet for four days, and a four or five-day deprivation of toilet paper, clothes, running water, hygiene supplies, a blanket, and a mattress); *Goldman v. Forbus,* 17 F. App'x 487, 488 (8th Cir. 2001) (six nights sleeping on a floor where he was often sprinkled with urine did not rise to the level of a constitutional violation).

of some specific opportunity to defend himself, or advance a viable legal claim, in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate constitutional rights. *Id.* Speculation that injuries might occur or could have occurred is insufficient. *See Hartsfield v. Nichols*, 511 F.3d 826, 833 (8th Cir. 2008). "Absent an articulation of how the alleged wrongful conduct actually blocked [the prisoner's] access to filing a complaint, or caused a filed complaint to be deficient, [the prisoner's] alleged injuries are merely speculative." *Id.*

Here, plaintiff does not explain, nor is it apparent, how all of the defendants' conduct, acting in concert, deprived him of the opportunity to advance any claims in this action or caused any deficiency in the complaint or his pleading practice. As such, his access to courts claim is invalid.

### 5.  Administrative Segregation

Plaintiff states that he was subjected to extreme hardship by "defendants" when "they" confined him to Administrative Segregation in violation of his due process rights on April 1, 2020. Plaintiff does not state how his due process rights were purportedly violated relative to his confinement in Administrative Segregation. Nor does he explain how his stay in the Administrative Segregation Unit differed from his stay in the general population. Additionally, plaintiff does not state which of the alleged defendants placed him in Administrative Segregation.

Plaintiff has not named which defendant placed him in Administrative Segregation, nor has he provided any facts about the conduct violations relative to the purported placement in the Unit. Plaintiff does not allege that any named defendant was directly responsible for placing him in any form of segregation at the St. Louis Justice Center, or for denying him review, i.e., purportedly denying him due process.

Plaintiff's failure to allege direct involvement of defendants in unconstitutional conduct are not cognizable in these proceedings because liability under § 1983 and requires a causal link

to, and direct responsibility for, the alleged deprivation of rights." *See Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

As an additional matter, the complaint fails to state a claim for unconstitutional placement in some form of segregation because it fails to allege there was a difference between his new conditions in confinement and the conditions in the general population which amounted to an atypical and significant hardship. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *see also Sandin v. Conner*, 515 U.S. 472 (1995) (for the Due Process Clause to be implicated, an inmate subjected to segregation must have been subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life.").

### 6. Emergency Call Button

Plaintiff asserts that 5 House lacks emergency buttons in the prison cells for use by the prisoners. He states that this could be dangerous if a prisoner has a medical emergency inside the cell. However, plaintiff does not indicate he had such an emergency and was unable to contact a guard or correctional officer during his stay in 5 House. Plaintiff does indicate he suffers from chronic health conditions, such as diabetes, epilepsy and hypertension.

As noted above, plaintiff fails to allege facts tending to show that the lack of a call button jeopardized his health or safety. Plaintiff does not cite, nor is the Court aware, of Eighth Circuit precedent supporting the conclusion that the absence of a functioning call button in a cell is *per se* unconstitutional, and other courts specifically addressing the issue have held it is not. *See Garner v. City of Philadelphia,* 2013 WL 4401327 at *6 (E.D. Pa. Aug. 16, 2013) ("Although panic buttons may offer inmates additional safety and protection, we cannot find that active panic buttons

constitute a 'minimal civilized measure of life's necessities' . . ."); *Torres v. Wright*, 2018 WL 1175408 at \*4 (D. Conn. Mar. 6, 2018) (prisoners do not have a constitutional right to a cell equipped with an emergency call button); *Price v. Bailey*, 2009 WL 198962 at \*3 (E.D. Mich. Jan. 26, 2009) (the failure to provide an emergency call button does not amount to deliberate indifference).

### 7. Loss of Personal Belongings

Plaintiff alleges that his rights were violated when his personal belongings were lost when they were transferred from MCC Chicago to the Justice Center in February of 2020.

Depriving a prisoner of his property may implicate the Due Process Clause and form the basis for a § 1983 action. However, if a state provides adequate remedies to compensate individuals for wrongful property loss, there is no absence of due process. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984), *Clark v. Kansas City Missouri School Dist.*, 375 F.3d 698, 703 (8th Cir. 2004). Missouri provides the post-deprivation remedy of replevin for recovery of personal property, Mo. R. Civ. P. 99.01 - 99.15, and plaintiff does not allege this remedy is inadequate. The Court therefore concludes that plaintiff's allegations that his personal property was lost when he transferred to the St. Louis County Detention Center in February of 2020 fail to state a claim under § 1983. *See Orebaugh v. Caspari*, 910 F.2d 526, 527 (8th Cir. 1990) (taking did not violate due process because Missouri inmate had adequate post-deprivation remedy), *Allen v. City of Kinloch*, 763 F.2d 335, 336–37 (8th Cir. 1985) (concluding Missouri replevin law was an adequate post-deprivation remedy to recover property, and explaining "where a random and unauthorized act by a state employee results in a tortious taking of private property, due process is satisfied if state tort law provides a meaningful post-deprivation remedy.").

To the extent plaintiff can be understood to claim that one or more the defendants negligently deprived him of his personal property, such allegations fail to implicate the Due

Process Clause.  *See Jackson v. Buckman*, 756 F.3d 1060, 1067 (8th Cir. 2014) ("conduct that is merely negligent or grossly negligent does not implicate the protections of the Due Process Clause).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #4] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion for access to the law library at St. Louis City Justice Center [Doc. #6] is **DENIED AS MOOT** as plaintiff is not longer incarcerated at that facility.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this <u>11th</u> day of December, 2020.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE